**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CLINT WALKER,** | **Civil Action No. 20-12803 (SDW)** |
| **Plaintiff,** | |
| v. | **OPINION** |
| **MARCUS SIMS, et al.,** | |
| **Defendants.** | |

**WIGENTON**, District Judge:

This matter comes before this Court upon Plaintiff Clint Walker's addenda to his complaint (ECF 4-5), Plaintiff's letter requesting service on Defendant Marcus Sims, Assistant Supervisor of the New Jersey Department of Corrections ("NJDOC" or "DOC") (ECF 13); Defendants Shantay Adams and Doreen Stanzione's ("the DOH Defendants") motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF 22); and Defendant Sergeant Antonio Costeiro's[1] motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) (ECF 23). Plaintiff did not file a response to the motions to dismiss. Pursuant to Federal Rule of Civil Procedure 78(b), the Court will determine the motions on the briefs, without oral argument. For the following reasons, this Court will grant the motions to dismiss and permit Plaintiff another attempt at service of the complaint on Defendant Marcus Sims.

---

[1] This Court will substitute the correct spelling of Defendant Sergeant A. Costeiro's name, as spelled in his brief. (ECF 23-1).

1

**I. THE COMPLAINT**

For the purpose of deciding the motions to dismiss, this Court accepts the following allegations in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (when deciding Rule 12(b)(6) motions to dismiss, courts must accept the factual allegations in the complaint as true, "but may disregard labels, conclusions, and formulaic recitation of the elements.") Plaintiff is civilly committed to the Special Treatment Unit, East Jersey State Prison, Administrative Segregation Unit, ("STU-EJSP-Ad-Seg Unit" or "the Facility") in Avenel, New Jersey under the New Jersey Sexually Violent Predators Act, N.J.S.A. 30:4-27.24 *et seq*. ("NJ SVPA"). The complaint arises out of the conditions of Plaintiff's confinement related to the COVID-19 outbreak and the resulting lock-down/quarantine[2] of the Facility for seven months as of the filing of the complaint. The defendants to the complaint are Marcus Sims, Assistant Supervisor of the New Jersey Department of Corrections ("DOC"); Sergeant A. Costeiro, First Shift Sergeant, STU-EJSP-Ad-Seg Unit; Doreen Stanzione, Department of Health ("DOH") Director of STU; and Shantay Adams, DOH Unit Director. (ECF 1, ¶ IB). The defendants are sued in their individual and official capacities under the federal civil rights statute, 42 U.S.C. § 1983. (*Id.*, ¶¶ IB, II). The following allegations are contained in Plaintiff's Statement of Claims. (ECF No. 1 at 5-19).

As of July 29, 2020, Plaintiff had been quarantined in his cell for 37 days with no medical treatment. He had COVID-19 symptoms for 4 ½ of those days. He was upset when nurses came to his housing unit to do another round of COVID-19 tests, and a corrections officer told him that DOC staff were not being properly tested for the virus and were exposing the residents to the virus.

---

[2] Plaintiff alternately uses the terms lock-down and quarantine, which the Court construes to mean the COVID-19 protocols that require residents to remain in their cells between 21 and 24 hours per day, 7 days a week.

Plaintiff feared that he would not live through another infection. Plaintiff also heard that Sergeant Costeiro had told another resident that they are just numbers who have no rights or privileges. This caused Plaintiff to fear for his health and safety because the DOC runs the Facility. DOH Defendants Stanzione and Adams were aware of the DOC lock-down of the facility and the degrading treatment of the residents, but did nothing. The complaint is not clear, but it appears that Plaintiff is alleging his housing unit was subject to 21 hours a day, 7 days a week lock-down in their cells when none of the residents in the housing unit were Covid19-positive, and 24 hours a day, 7 days a week when there were Covid19-positive residents in the housing unit. The defendants ignored a pattern of lock-downs, isolation, and the lack of treatment provided to the STU residents. The DOH Defendants permitted the DOC Defendants to create these conditions of confinement, which caused Plaintiff emotional distress and will prolong his commitment because he has been unable to receive sex offender treatment.

On July 31, 2020, Corrections Officer Jones humiliated Plaintiff by spreading word that Plaintiff had been infected with COVID-19. Officer Jones told Plaintiff that he can do whatever he wants because DOH treatment staff are not allowed in the Facility during the lock-down. Officer Jones threatened to move Plaintiff to a unit where he would have conflicts if he complained.

In August 2020, Covid19-positive residents were placed in the Facility with Covid19-negative residents, although there was a hospital area in the Facility where at least one Covid19-positive resident was housed. Plaintiff's complaints to Sergeant Costeiro and Lieutenant Estrada were ignored. Sergeant Costeiro authorized the housing placements and threatened Plaintiff and others with lock-up if they complained. Residents also complained to DOH treatment staff but were told that treatment staff could not get involved in how DOC handled the COVID-19 outbreak.

The DOH Defendants approved the placement of Covid19-positive residents in the units with Covid19-negative residents. The defendants failed to train staff not to house COVID-19-positive residents with COVID-19 negative residents. Additionally, the housing units were not disinfected and the ventilation system did not work properly. Although sex-offender treatment staff were allowed into the Facility for 5-15 minutes a day in August 2020, actual treatment was not provided to the residents.

For relief, Plaintiff seeks money damages, declaratory judgment and prospective injunctive relief based on his conditions of confinement. "[A] state employee may be sued in his official capacity only for 'prospective' injunctive relief, because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985); *Ex parte Young*, 209 U.S. 123, 159–60 (1908)).

### A. Addenda to Complaint

On September 25, 2020 (ECF No. 4) and again on October 16, 2020 (ECF No. 6), Plaintiff filed addenda to his complaint. In the addenda, Plaintiff describes events related to the COVID-19 lock-down/quarantine at the STU-EJSP-Ad-Seg. Unit that occurred after the complaint was filed. It is not clear whether Plaintiff was attempting to add new defendants to the complaint, as none of the officers whose conduct he complained about were identified as defendants. Federal Rule of Civil Procedure 15(d), permits motions for leave to file supplemental pleadings. Plaintiff did not follow the proper procedure because he did not file a motion for leave to file a supplemental complaint. Therefore, this Court will not consider the addenda as part of the complaint.

### B. Service on Defendant Marcus Sims

Plaintiff sent a letter request to this Court seeking an order for the United States Marshals Service to serve the summons and complaint on Defendant Marcus Sims, Assistant Supervisor of the New Jersey Department of Corrections, after the first attempt at service was unsuccessful. (ECF 13).  Pursuant to Federal Rule of Civil Procedure 4(m), and for good cause shown, the Court will direct the Clerk of Court to provide Plaintiff with a blank USM-285 form and instructions on how to obtain service by a United States Marshal.  Plaintiff should make certain that he has the correct address where the defendant may be served pursuant to Federal Rule of Civil Procedure 4.

## II. MOTIONS TO DISMISS

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief may be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016).  A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (quoting Fed. R. Civ. P. 8(a)(2)). The statement of the claim, however, must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570)).  To meet the plausibility requirement, "the court need only be able to draw a 'reasonable inference' that the defendant has broken the law. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557)).  A court should determine "plausibility by drawing inferences from the facts pleaded using its experience and common sense." *Thomas v. Christie*, 655 F. App'x 82, 84 (3d Cir. 2016) (citing *Argueta v. U.S. Immigration & Customs Enf't,* 643 F.3d 60, 69 (3d Cir. 2011)).

**A. DOH Defendants' Motion to Dismiss**

In the complaint, Plaintiff asserts the DOH Defendants are liable under 42 U.S.C. § 1983 for violating his federal constitutional rights. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (quoting *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000)). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)). A plaintiff must also "demonstrate a defendant's "personal involvement in the alleged wrongs." *Id.* at 222 (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Under Section 1983,

> [t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.,* 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original).

*Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n. 5 (3d Cir. 2010).

In their motion to dismiss, the DOH Defendants do not contest that they are state actors under § 1983. (ECF 22-1). Therefore, this Court must begin by identifying the constitutional violation alleged. As discussed below, Plaintiff, as a civilly committed person under the NJ SVPA, invokes his substantive due process rights under the Fourteenth Amendment based on the

6

conditions of his confinement and the failure to provide him with treatment necessary to obtain his release from civil commitment.[3]

### 1. Fourteenth Amendment Conditions of Confinement Claims Against the DOH Defendants

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const., Amend. XIV, § 1. "[T]he Fourteenth Amendment provides the standard for evaluating the constitutionally protected interests of individuals who have been involuntarily committed to a state facility." *Rivera v. Rogers*, 224 F. App'x 148, 150 (3d Cir. 2007) (citing *Youngberg v. Romeo*, 457 U.S. 307, 312 (1982); *Tinsley v. Main*, No. 20-2846, 2021 WL 2853152, at *2 (3d Cir. July 8, 2021) (citing *Youngberg v. Romeo*, 457 U.S. 307, 325 (1982); *Smego v. Mitchell*, 723 F.3d 752, 756 (7th Cir. 2013)). The test for violation of the Due Process Clause in this context requires "balancing [the plaintiff's] liberty interests against the relevant state interests." *Tinsley,* 2021 WL 2853152, at *2 (quoting *Youngberg*, 457 U.S. at 321). A state has the duty to provide civilly committed persons adequate food, shelter, clothing, medical care and reasonable safety within the institution. *Youngberg*, 457 U.S. at 324. In determining whether a state has met its obligations in these respects, decisions made by the appropriate professional are entitled to a presumption of correctness. *Id.* ("Such a presumption is necessary to enable institutions of this type—often, unfortunately, overcrowded and understaffed—to continue to function.") "A single professional may have to make decisions with respect to a number of residents with widely varying needs and problems in the course of a normal day. The administrators, and particularly professional

---

[3] In liberally construing a pro se complaint, courts should "apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (quoting *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (internal quotations omitted).

personnel, should not be required to make each decision in the shadow of an action for damages." *Youngberg*, 457 U.S. at 324–25.

The DOH Defendants assert, as the allegations in the complaint concede, that the DOC operates the STU-EJSP-Ad-seg Unit, and the DOH provides mental health treatment to its residents. (ECF 22-1 at 14-16). Therefore, DOH and its employees are not responsible for responding to COVID-19 in the Facility. (*Id.*) Further, the DOH Defendants assert that they do not supervise employees of the DOC, a separate state agency. (*Id.* at 18-19). Therefore, the DOH Defendants contend that all claims related to the COVID-19 conditions in the facility, and the DOC's response to the pandemic, fail to state a claim against them. (*Id.*)

This Court takes judicial notice of N.J.S.A. 30:4-27.34(a), (b),[4] which provides:

> a. The Department of Corrections shall be responsible for the operation of any facility designated for the custody, care and treatment of sexually violent predators, and shall provide or arrange for custodial care of persons committed pursuant to this act. Except as may be provided pursuant to subsection c. of section 9 of this act, a person committed pursuant to this act shall be kept in a secure facility and shall be housed and managed separately from offenders in the custody of the Department of Corrections and, except for occasional instances of supervised incidental contact, shall be segregated from such offenders.
>
> b. The Division of Mental Health Services in the Department of Human Services shall provide or arrange for treatment for a person committed pursuant to this act. Such treatment shall be appropriately tailored to address the specific needs of sexually violent predators.

(footnote omitted).

---

[4] Courts may take judicial notice of "a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The statute confirms the DOH Defendants' assertion that they were not responsible for the COVID-19 protocols in the Facility, as they are responsible solely for providing appropriate treatment. Plaintiff acknowledges in his complaint that the DOC, not the DOH, is responsible for maintaining the operations and security within the Facility.  Indeed, based on the duties of the agencies described in N.J.S.A. 30:4-27.34, it is implausible that DOH employees have supervision over DOC employees in providing custody and care over those persons civilly committed under the NJ SVPA.  Therefore, Plaintiff's Fourteenth Amendment conditions of confinement claim under § 1983 claim is dismissed with prejudice as to the DOH Defendants in their individual and official capacities.[5]

### 2. Fourteenth Amendment Claim Against the DOH Defendants for Failing to Provide Sex Offender Treatment

"New Jersey's statutory scheme for the civil commitment and treatment of sex offenders creates a due process liberty interest in [sex offender] treatment." *Tinsley*, 2021 WL 2853152, at *2 (citing *Leamer v. Fauver*, 288 F.3d 532, 545 (3d Cir. 2002)).  The test for a Fourteenth Amendment violation is whether "the officials acted with deliberate indifference with respect to [the plaintiff's] treatment and deprived him of his liberty interest in a way that shocks the conscience." *Id.* (citing *Leamer*, 288 F.3d at 546-47).

Plaintiff alleges that he did not receive sex offender treatment for seven months leading up to the filing of his complaint in August 2020, due to the lock-down/quarantine imposed on the

---

[5] In addition to failing to state a claim, the DOH Defendants correctly argue (ECF 22-1 at 6) that they are not "persons" liable for money damages in their official capacities under 42 U.S.C. § 1983. *See, Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1996) ("state officials acting in their official capacities are not "persons" under § 1983" (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).  To the extent the complaint raises such claims, the § 1983 official capacity claims for money damages against the DOH Defendants are dismissed with prejudice.

facility by the DOC to protect residents and staff against the spread of COVID-19. Given the unprecedented challenges in protecting the health and safety of residents and staff in an institutional setting during a worldwide pandemic, it does not shock the conscience that treatment was suspended for the first seven-months of the pandemic to prevent treatment staff from potentially spreading the virus in the Facility. *See*, *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 329 (3d Cir. 2020) (recognizing that the challenges to detention facility administration during an unprecedented pandemic weighed against finding the administration's response to COVID-19 violated the constitutional rights of immigration detainees).

The complaint alleges that the Facility was locked down to prevent the spread of COVID-19 by anyone entering who may have been exposed to the virus. This caused the typical form of treatment, staff entering the Facility and interacting with the residents in a group setting, to pose a danger to residents and other staff. While many in society responded with remote technology based communications, resources for funding and installing the necessary technology in the Facility would likely cause delay in providing treatment. Based on these legitimate governmental considerations in the administration of the Facility, the lack of treatment for those civilly committed under the NJ SVPA for the first seven months of the pandemic does not shock the conscience in violation of the Fourteenth Amendment. This Court will, however, dismiss this claim without prejudice because amendment of the complaint against the DOH Defendants may not be futile if there was a *continuing failure* to deprive Plaintiff of his liberty interest in treatment, under conditions that would shock the conscience. Therefore, the DOH Defendants' motion to dismiss this claim is granted.

      C. **NJ DOC Sergeant A. Costeiro's Motion to Dismiss**

Sergeant A. Costeiro, a shift supervisor of Plaintiff's housing unit, does not contest that he is a state actor under § 1983 but argues that Plaintiff fails to state a constitutional claim against him based on the alleged failure to test DOC staff for COVID-19 or based on Plaintiff's 37-day quarantine while he had COVID-19.[6] In the alternative, Sergeant Costeiro argues that he is entitled to qualified immunity.[7] (ECF No. 23-1).

      **1. Whether Plaintiff Fails to State a Claim Against Sergeant Costeiro for Failing to Properly Test Officers and Staff for COVID-19.**

As discussed in Section II.B. *supra*, Plaintiff's conditions of confinement claims arise under the Fourteenth Amendment. A state has the duty to provide civilly committed persons adequate food, shelter, clothing, medical care and reasonable safety within the institution. *Youngberg*, 457 U.S. at 324. It bears repeating that in determining whether a state has met its obligations to civilly committed persons, decisions made by the appropriate professional are entitled to a presumption of correctness. *Id.* (finding "such a presumption is necessary to enable institutions of this type—often, unfortunately, overcrowded and understaffed—to continue to function.") Under New Jersey law, it is the DOC that is obligated to provide the custodial care for civilly committed persons under the SVPA. Therefore, decisions by the appropriate DOC professional in providing custodial care are entitled to a presumption of correctness.

---

[6] The complaint does not, in each instance, clarify which claim is asserted against which defendant(s). Defendant Costeiro has construed the complaint as raising only these two claims against him.

[7] Defendant Costeiro seeks to dismiss Plaintiff's claims under 42 U.S.C. § 1983 and the analogous state law claims under the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-2 *et seq*. Plaintiff did not bring claims under the NJCRA, and the Court finds no reason to construe the complaint as containing such claims.

In this regard, Plaintiff alleges solely that (1) there had already been an outbreak of COVID-19 in the Facility; (2) this was Plaintiff's third COVID-19 test; (3) that Sergeant Costeiro ordered corrections officers to escort nurses through the Facility to conduct COVID-19 tests on the residents; (4) that it was rumored that the DOC was not properly testing staff for COVID-19; (5) this put Plaintiff in fear for his future health. In view of these allegations, Plaintiff has not alleged facts plausibly suggesting that Sergeant Costeiro was personally involved in failing to properly test DOC staff for COVID-19. *See*, *Iqbal*, 556 U.S. at 677 ("each government official . . . is only liable for his or her own misconduct.") Although "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[,]" Plaintiff has not alleged that Sergeant Costeiro was a policymaker or that he established a policy or practice that directly caused a threat to Plaintiff's future health by permitting COVID19-positive staff into the facility without proper testing. *See*, *A.M. ex rel. J.M.K..*, 372 F.3d at 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989) (describing supervisory liability based on policy or practice). Therefore, this Court will grant Sergeant Costeiro's motion to dismiss this claim without prejudice, because Plaintiff has not alleged Sergeant Costeiro's personal involvement in the alleged constitutional violation.[8]

---

[8] Like the DOH Defendants, Sergeant Costeiro seeks dismissal of the § 1983 claims for money damages against him in his official capacity. (ECF 23 at 12-13.) "State officials acting in their official capacities are not 'persons' under § 1983." *Blanciak*, 77 F.3d at 697 (citing *Will*, 491 U.S. at 71.) To the extent the complaint raises such claims, the § 1983 official capacity claims for money damages against Sergeant Costeiro are dismissed with prejudice.

## 2. Whether Plaintiff Fails to State a Claim Against Sergeant Costeiro for Plaintiff's Confinement to his Cell for 37 Days in Quarantine

Sergeant Costeiro argues Plaintiff failed to allege his personal involvement, by his direct participation or directing others, to confine Plaintiff to his cell for 37 days while he had COVID-19.  (ECF No. 23-1 at 19).  Even if Plaintiff stated a claim, Sergeant Costeiro alleges he is entitled to qualified immunity.  First, this Court must define the contours of the constitutional right at issue.  As discussed in Section II.B.2 *supra*, a civilly committed sex offender under the NJ SVPA has a due process liberty interest in sex offender treatment.  *Tinsley*, 2021 WL 2853152, at *2 (citing *Leamer*, 288 F.3d at 545 (3d Cir. 2002)).  The 37-day quarantine deprived Plaintiff of treatment.  The test for a Fourteenth Amendment violation is whether "the officials acted with deliberate indifference with respect to [the plaintiff's] treatment and deprived him of his liberty interest in a way that shocks the conscience."  *Id.* (citing Leamer, 288 F.3d at 546-47).  Assuming Sergeant Costeiro directed Plaintiff's placement in quarantine for 37 days, a period during which Plaintiff alleged he had COVID-19 symptoms for 4 ½ days, this conduct does not shock the conscience.  Plaintiff's quarantine occurred in or about July and August 2020, a time when our society was aware of the contagiousness of COVID-19 and the high risk it posed to certain vulnerable individuals, but we were far from understanding all of the ways in which the virus might be transmitted.[9]

As discussed above, the DOC is charged with protecting the safety of the residents and staff of the Facility, and professional management decisions are entitled to a presumption of correctness.  Plaintiff has not overcome the presumption that quarantine was a correct response to

---

[9] The Court takes judicial notice, under Federal Rule of Evidence 201(b), of the Center for Disease Control and Prevention's ("CDC") website, including archived content.  Available at https://www.cdc.gov/coronavirus/2019-nCoV/index.html (last visited January 26, 2022).

protect the residents and staff in the Facility from the spread of COVID-19. Given the state of knowledge of COVID-19 by public health authorities whom society looked to for guidance,[10] it does not shock the conscience to place an individual in quarantine for 37 days if he or she was exposed to or had contracted the virus. Therefore, Plaintiff fails to state a Fourteenth Amendment due process claim. This claim will be dismissed without prejudice.

### III. CONCLUSION

For the reasons stated above, this Court will grant the motions to dismiss filed by the DOH Defendants and Defendant Sergeant Costeiro. "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citations omitted). Plaintiff has leave to file an amended complaint, with respect to the claims dismissed without prejudice, within 30 days of the date of entry of this Opinion and the accompanying Order. Pursuant to Federal Rule of Civil Procedure 4(m), Plaintiff shall also have 90 days from the date of entry of this Opinion and Order to serve Defendant Marcus Sims with a summons and the complaint.

An appropriate Order follows.

**Dated: January 31, 2022**

*[signature]*

Hon. Susan D. Wigenton,
United States District Judge

---

[10] *See supra* n. 7.